ORIGINAL

ECF

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
OCT 30 2003
U.S. COURT OF FEDERAL CLAIMS

INTERNATIONAL DATA PRODUCTS CORP.:
1306 Squire Court
Dulles, VA 20166

Plaintiff,

v.

No. 03-2515C

THE UNITED STATES OF AMERICA,

Defendant.

**COMPLAINT**

Plaintiff International Data Products Corp. ("IDP") complains as follows regarding defendant The United States of America:

**Jurisdiction**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491 and 41 U.S.C. § 609(a)(1) as this is a dispute concerning a contract termination and arises from a contracting officer's final decision.

**Parties**

2. Plaintiff International Data Products Corp. is a Maryland corporation with its principal place of business in Dulles, Virginia.

3. Defendant The United States of America is sued here as a result of actions performed on its behalf by its agency, the Department of the Air

Force ("DAF"), and the agency's head, the Secretary of the Air Force, together with his officers, agents, employees, and representatives, including but not limited to Kay P. Walker, a Contracting Officer for DAF, and Paul E. Siemons, a Termination Contracting Officer for DAF.

**Facts**

4. IDP, a computer equipment manufacturer and a small, minority owned business, entered the United States Small Business Administration's 8(a) program in 1994.

5. In May 1997, the DAF awarded IDP an indefinite-delivery, indefinite-quantity 8(a) contract, known as Desktop V ("DTV") to provide computers, computer and warranty services, and software products and upgrades to Government agencies, including to DAF. DTV had a one year base period with four one-year options. The contract required IDP *inter alia* to maintain certain inventory levels to assure IDP could meet DAF's requirements.

6. On February 5, 1998, IDP informed SBA of IDP's owner's intention to sell their IDP stock to Dunn Computer Corporation, a non-8(a) concern.

7. Pursuant to the Small Business Act, Congress required that DAF terminate IDP's DTV contract because IDP would be owned by a non-8(a)

eligible owner. The statutory requirement states as follows at 15 U.S.C. § 637(a)(21):

> (A) Subject to the provisions of subparagraph (B) [which provides for waivers in certain situations, including when contract termination would severely impair attainment of the agency's program objectives or missions], a contract (including options) awarded pursuant to this subsection shall be performed by the concern that initially received such contract. Notwithstanding the provisions of the preceding sentence, if the owner or owners upon whom eligibility was based relinquish ownership or control of such concern, or enter into any agreement to relinquish such ownership or control, such contract or option shall be terminated for the convenience of the Government, except that no repurchase costs or other damages may be assessed against such concerns due solely to the provisions of this subparagraph.

8. On February 20, 1998, the DTV contracting officer submitted to SBA a request for a waiver of the statutory 8(a) requirement that the DAF terminate IDP's DTV contract . DAF based its waiver request on its contracting officer's assertion that termination of the DTV contract would severely impair attainment of the agency's program objectives or missions.

9. On May 1, 1998, Dunn Computer Corporation closed on the purchase of IDP's owner's stock.

10. Thereafter, the SBA denied the DAF's waiver request, and IDP appealed the denial to the SBA's Office of Hearings and Appeals

(SBA/OHA Case No. BDPW-98-10-14-05). On August 31, 1999, SBA's Office of Hearings and Appeals issued its decision affirming SBA's denial of DAF's waiver request. Neither DAF nor IDP further appealed the matter. Accordingly, SBA's final decision denied DAF the right to waive the statutory 8(a) requirement that DAF terminate IDP's DTV contract.

11. On October 8, 1999, DAF issued two notices purporting to terminate IDP's DTV contract. DAF stated in its termination notices that it continued to hold IDP responsible with respect to "rights and liabilities of the parties, arising under the contract or otherwise, concerning defects, guarantees or warranties relating to any articles or component parts furnished to the Government by the Contractor under the contract or this agreement, [and] the rights and liabilities of the parties concerning software upgrades as required by Section C of the contract." Pursuant to these notices, DAF continued to demand that IDP provide warranty and software upgrade services under its now terminated DTV contract. DAF had no right to demand that a part of the contract continue. IDP objected to DAF's decision to terminate only part of the DTV contract, but DAF continued to demand that IDP provide additional warranty and software upgrade services under its now terminated DTV contract.

12. IDP submitted a timely termination proposal to DAF, but after extensive negotiation, was unable to resolve the issues. DAF's position was that nothing was due for the termination because the contract was an ID/IQ vehicle and DAF had ordered the minimum requirement.

13. IDP submitted a certified claim on September 18, 2002, seeking a contracting officer's decision on the termination costs. The amount of the claim was $1,729,205, consisting of the following parts:

| Cost Element | Amount |
|---|---|
| Finished Components in Inventory at time of Termination | $861,206 |
| Restocking Costs for Inventory | $386,709 |
| Third Party Maintenance (Warranty/Upgrades provided post-termination as DAF Demanded | $440,990 |
| Executive Time preparing and prosecuting termination Settlement | $ 21,500 |
| Legal & Accounting Time preparing and prosecuting termination Settlement | $ 18,800 |

14. On November 15, 2002, DAF's contracting officer issued a final decision rejecting all of IDP's claim. A copy of the contracting officer's decision is attached as Exhibit 1 hereto.

**Count I**

15. IDP incorporates paragraphs 1-14 above.

16. DAF's contracting officer's determination that DAF need not pay

IDP's termination costs is incorrect. Under the parties agreement, the Government contracted with IDP to maintain the inventory at issue and, therefore, in a termination proceeding, needs to pay the cost of the inventory and restocking cost for which DAF contracted. Furthermore, the costs of providing warranty/upgrade work demanded post-termination by DAF is compensable because DAF had no right to terminate only a part of the parties' contract. Finally, the costs of executive and professional time in support of the termination process are also compensable.

WHEREFORE, plaintiff IDP respectfully prays that this Court:

(A) Issue a judgment declaring that the United States and its agency, the DAF, is required to pay $1,729,205 to IDP; and

(B) Grant such other, further and different relief to the plaintiff as the Court deems just and proper.

Respectfully submitted,

Edward J. Tolchin
Fettmann, Tolchin & Majors, P.C.
10509 Judicial Drive, Suite 300
Fairfax, VA 22030
703-385-9500
703-385-9893 (facsimile)
etolchin@ftm-pc.com
Counsel for Plaintiff

**DEFENSE CONTRACT MANAGEMENT AGENCY**
DEFENSE CONTRACT MANAGEMENT AGENCY ATLANTA
ATTN: DCMAE-GATC
805 WALKER STREET, SUITE 1
MARIETTA, GA 30060-2789
Tel: (770) 590-6151
Fax: (770) 590-2081
E-mail: pslemons@dcmde.dcma.mil

IN REPLY REFER TO

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

DCMAE-GATC

November 15, 2002

SUBJECT: Final Decision for Termination of Completely Terminated Contract F01620-97-D-0001, International Data Products, Inc., Sterling, VA, Docket F006640EA

International Data Products, Inc.
c/o Steelcloud, Inc.
ATTN: Mr. Edward M. Spear, President
1306 Squire Court
Sterling, VA 20166
espear@steelcloud.com

Dear Mr. Spear:

This is the final decision of the Contracting Officer relative to International Data Products' September 18, 2002 termination settlement proposal on contract F01620-97-D-0001 in the revised amount of $1,729,205.

On October 22, 1996, Maxwell AFB awarded IDP firm-fixed-price, indefinite delivery, indefinite quantity (IDIQ) contract F01620-97-D-0001. The contract was for commercial computer systems and bundled support services to support general purpose applications which were to satisfy portable, desktop, and server computer needs common throughout the Air Force, other Department of Defense (DoD) agencies (excluding Navy & Army), and as directed by GSA and other Federal civilian agencies. The contract price at award was $109,735 for a base year and four option years. The contract was terminated for the convenience of the Government on October 8, 1999, two and a half years into its term under FAR 52.211-7000, Termination - Commercial Items. Your first termination settlement proposal in the amount of $3,572,980 was dated January 6, 2000. The second proposal dated March 1, 2000 was for $3,564,524, a third proposal dated April 26, 2000 was for $4,307,652. In response to a DCAA audit, the proposal was amended on April 11, 2001 to $3,135,642. This amount was then reduced to $1,729,205 in the certification letter dated September 18, 2002.

The termination clause in the contract [252.211-7000 (May 1991)] provides, in pertinent part, that the Government shall pay "The reasonable, allowable, and allocable costs, determined in accordance with FAR Part 31, incurred by the contractor, its subcontractors and suppliers prior to the date of termination for completed work that has not previously been paid for; for work in process and

EXHIBIT
1

materials directly related to the terminated portion of the contract." At the time of termination, $42,760,416 in orders had been placed, delivered and paid. All work ordered under the contract has been completed, and you have received full payment therefor. As a consequence, you have no further entitlement under the contract's termination clause.

The termination clause also provides that, "The Government will make no payment for: ... An amount which exceeds the product of the unit price of the terminated units multiplied by the number of units in process under the contract." All of the units ordered have been shipped and these amounts have been paid. The termination clause further states, "In no event shall the sum of the termination amounts payable and any amounts paid for items delivered under the contract exceed the total contract price." This comports with the limitation found in FAR 49.207, Limitation on Settlements, "The total amount payable to the contractor for a settlement, before deducting disposal or other credits and exclusive of settlement costs, must not exceed the contract price less payments otherwise made or to be made under the contract." The payment limit set forth in the termination for convenience provisions is determined by adding the price for the minimum value of services the Government was obligated to procure to the value of any services it ordered in excess of that minimum. The contract price for purposes of applying this provision in this matter is $42,760,416. The Government's liability can "in no event" exceed this amount. You have previously received payment of this entire sum.

Had the clause at FAR 52.212-4 been used, as you argued in your letter of November 21, 2001, the same outcome would result. At the time of termination, the contract was 100 percent complete, all orders having been filled and paid. Since the percentage of work performed is equal to the contract value and equal to the amounts already paid there would be no liability.

A discussion of specific costs elements follows:

| Cost Element | Proposed | TCO Position | Ref Note |
|---|---|---|---|
| Finished Components | $861,206 | $0 | 1 |
| Restocking Costs | 386,709 | 0 | 2 |
| Third Party Maintenance | 440,990 | 0 | 3 |
| Executive Time | 21,500 | 0 | 4 |
| Legal & Accounting | 18,800 | 0 | 5 |
| Total Costs | $1,729,205 | $0 | |

**1. Finished Components** – ($0) In previous discussions, you have argued that the inventory of finished components was maintained to meet contract warranty requirements. Warranty obligations are not separately priced on the contract, but included in the contract price for each item ordered. As you have been fully paid for all ordered items, you have been fully paid for any costs associated with meeting your warranty obligations. The warranty is an expense of IDP and not related to the termination as discussed later. This inventory is IDP's property. Further, FAR 45.601 defines termination inventory as "any property purchased, supplied, manufactured, furnished, or otherwise acquired for the performance of a contract subsequently terminated **and properly allocable to the terminated portion of the contract...."** As there were no terminated items, there can be no termination inventory.

2. **Restocking Costs** – ($0) As discussed above, you have received full payment for all work ordered under the contract. Nothing in the language of the termination clause establishes Government liability for costs incurred in anticipation of future orders in excess of the contractual minimum order quantity. The minimum quantity was substantially exceeded. Again this cannot be considered termination inventory as there were no terminated items.

3. **Third Party Maintenance** – ($0) The proposed amount consists of claimed warranty labor of $126,990 and third party maintenance/shipping and receiving costs of $314,000. These costs are included in the initial purchase price of the ordered items and do not relate to the termination. "The contractor agreed that the warranty costs are included in the contract's equipment pricing schedule. However, it contends that the warranty costs included in the contract were based upon completion of the entire 5-year period of performance (base year and all option years). Since the contract was terminated after only two (2) years of performance, IDP contends that it failed to recover all of the anticipate revenue needed to continue providing warranty and maintenance." The government is not obligated to guarantee future work.

4. **Executive Time** – ($0) The contractor's proposed executive time at an estimated 300 hours times $65/hour and estimated administrative time at 80 hours @ $25/hour. This item was not supported. I asked if there was any contemporaneous documentation and was told there was none. Bare cost summaries provided by a contractor without any underlying documentation constitute mere speculation and do not discharge the contractor's burden of proving that the purported costs were in fact incurred. Further, there was no showing that these costs were booked directly to the contract. Expenses carried as an element of G&A are assumed to be recovered in the year they are incurred and recorded, absent persuasive evidence to the contrary. Expenses so recorded and presumably recovered cannot retrospectively be removed from the indirect expense pool. Such 'relief' can be done only prospectively, i.e. before the expenses are recorded or, more importantly, before they are allocated to and recovered from the on-going business. The actual hours of labor involved were not tracked and the proposal is based on interviews with employees. Direct charges should be removed from the indirect expense pools and charged directly to the contract (FAR 31.205-42(c)(3)). However, these charges would fail any test as a direct cost since there is no contemporaneous support for the hours charged.

5. **Legal & Accounting** – ($0) The contractor proposed a portion of the Counsel services at $5,000 per month for 8 months. The legal fees were based on a signed declaration/affidavit from the attorney estimating the costs he had already incurred. Invoices show "General Counsel Services" at $5,000 per month with no breakout of effort related to the termination. Counsel had a relationship with your company going back well before the stop work notice. There is no showing why these costs should be charged directly to a contract. There is no showing that you incurred additional legal expenses as a direct result of the termination of this contract. There was no showing IDP normally charges legal fees directly to contracts and the invoices do not meet the requirements of FAR 31.205-33 for documentation. I do not consider the legal fees allowable where a contractor does not incur legal expenses directly related to the termination settlement that are not otherwise covered by a general retainer.

Based upon the foregoing it is my decision that you are not entitled to any additional compensation for the termination beyond the amounts previously paid. This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C.603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

You may choose to try settling this dispute through the use of Alternate Dispute Resolution (ADR) techniques. The Defense Contract Management Agency is committed to the use of ADR whenever possible. Please note that the ASBCA is also favorably disposed to the use of Alternate Dispute Resolution. ADR techniques utilized by the Board include settlement judges (third party neutrals/mediators); mini-trials; and summary trial with binding decisions. Should you be interested in using some form of ADR to attempt to resolve this dispute, either outside or within the context of an ASBCA appeal, please contact me. It should be noted that this offer to use ADR or use of its procedures does not in any way alter the respective 90-day and 12-month appeal deadlines at the ASBCA and COFC or respective procedural requirement for filing an appeal. Nor would your election to pursue ADR preclude you from contemporaneously filing a formal and timely appeal with either adjudicative body. The offer to ADR or use of its procedures does not constitute a reconsideration of this final decision

Should you have any questions, please contact the undersigned at (770) 590-6151, FAX (770) 590-2110, or e-mail pslemons@dcmde.dla.mil.

PAUL E. SLEMONS
Termination Contracting Officer

cc:

DCMA Atlanta
ATTN: DCMDE-GAG/Leigh Owens, Esq.
805 Walker Street, Suite 1
Marietta, GA 30060-2789
lowens@dcmde.dcma.mil
Phone: 770-590-6264
FAX: 770-590-6805

Department of the Air Force
ATTN: Capt. Stephen See, Esq.
490 East Moored Drive, Building 892
Maxwell, AFB Gunter Annex, AL 36114-3207
stephen.see@gunter.af.mil
Phone: 334-416-2974
FAX: 334-416-1384

Department of the Air Force
Air Force Legal Services Agency/JACN
ATTN: Colonel Frank Lamir, Esq.
1501 Wilson Boulevard 606
Arlington, VA 22209
frank.lamir@pentagon.af.mil
Phone: 703-696-9082
FAX: 703-696-9084

Department of the Air Force
Air Force Legal Services Agency/JACN
ATTN: Major Jacqueline Posner, Esq.
1501 Wilson Boulevard 606
Arlington, VA 22209
jacqueline.posner@pentagon.af.mil
Phone: 703-696-9089
FAX: 703-696-9084

Department of Justice
Commercial Litigation, Civil Division
ATTN: John Williamson, Esq.
1100 L Street, NW Room 12062
Washington, DC 20530
john.williamson@usdoj.gov
Phone: 202-307-0277
FAX: 202-307-0972

Department of the Air Force
ATTN: HQ SSG/PKS-3/Kay P. Walker
50 Lemay Plaza South, Building 804
Maxwell, AFB Gunter Annex, AL 36114-3207
kay.walker@gunter.af.mil
Phone: 334-416-1781
FAX: 334-416-4078

International Data Products, Inc.
c/o Steelcloud, Inc.
ATTN: Mr. Keith Murphy, CPA
1306 Squire Court
Sterling, VA 20166
kmurphy@steelcloud.com
Phone: 703-450-0400
FAX: 703-450-0406

Fettmann, Tolchin & Majors, P.C.
ATTN: Edward J. Tolchin, Esq.
Suite 502
10615 Judicial Drive
Fairfax, VA 22030-9893
etolchin@ftm-pc.com
Phone: 703-385-9893
FAX: 703-385-9893